Our final case on the calendar today is Jimmy Lozano v. United States, number 173800. Thank you. Good morning, Your Honor. Good morning. I'm Stephanie Carlin. I'm counsel for appellant Jimmy Lozano in this case. I think this case presents not just an unusual but perhaps unique set of circumstances. Mr. Lozano pled guilty believing that he, to a criminal offense, believing that he was a citizen of the United States. He believed he was a citizen of the United States because the United States Department of State issued him a passport. It issued him a passport after he submitted an application and he included in his application accurate and complete information. Many years passed after Mr. Lozano got his passport, which was issued in 2002. His basis for believing he was a citizen was also that he came to the United States legally with his mother as a lawful permanent resident. His mother obtained citizenship. Mr. Lozano was advised by counsel that he could obtain derivative citizenship and that once he obtained a passport or a certificate of naturalization, that was presumptive evidence of his citizenship. Mr. Lozano went through that process. Several years after he received his passport, he was indicted and convicted in this district for Hobbs Act robbery or conspiracy to commit Hobbs Act robbery. Mr. Lozano served his sentence. He served his term of supervised release. He subsequently applied for another passport, a renewal passport. Again, in his renewal passport, Mr. Lozano provided complete and accurate information. It wasn't until Mr. Lozano was convicted in 2016 in the District of Vermont that the Department of State told him, we didn't believe that this passport was issued correctly on our part, and therefore you were no longer a citizen. At the time he entered his plea, however, Mr. Lozano had a well-founded belief. In fact, he probably was a citizen until the Department of State revoked his citizenship. As soon as he found that out, he contacted counsel and he brought the quorum nobis, the appeal of which, the denial of which is now pending before your honors. Mr. Lozano claimed in the district court that his plea was not voluntary because he entered it under this fundamental misunderstanding of the likely consequences, the possible consequences of the plea. However, this is characterized, whether you characterize it as a direct consequence of a plea or collateral consequence of a plea, Mr. Lozano, as a result of his plea, is now, the government is seeking to remove him from the United States. Well, does it matter whether it's a direct or collateral consequence? Or does it matter that courts in this circuit have concluded previously that it's not a basis for withdrawing a plea? I would say that today and in the many, maybe perhaps the last decade, courts generally have moved away in the immigration context from the characterization of direct or collateral. But this court hasn't. Yes, I do think it has since 2002. But just to complete that thought, Your Honor, because you're certainly correct that historically the analysis was if something is a collateral consequence, a client, a defendant doesn't have to be advised of that. Whereas if something is characterized as a direct consequence, he does have to be advised of that. I would say- By counsel or the court? That's a very good point, Your Honor. This court's cases that I think Judge Sullivan is referring to previously discuss the obligation, primarily the obligation of the court to advise a defendant of the consequences, immigration consequences, and found that the court had no such obligation. There are cases by this court that discussed whether or not counsel has an obligation to advise a defendant of the consequences. And I'm talking about cases that long preceded Padilla. In the United States, it's Cudo, which I think answers Your Honor, Judge Sullivan's question, which was a 2002 case from this court, a case that was decided years before Mr. Lozano's conviction became final. This court found that counsel's-it was a Sixth Amendment case, not a Fifth Amendment case- but found that counsel's failure to advise-or misadvising, excuse me, a client about the immigration consequences of the plea was ineffective assistance of counsel. No, I get that, but this is a case in which you're not even asserting that- Not at all. That counsel was ineffective. Nor are we asserting-yes, we are not asserting that. Nor are we asserting that the district court failed in some sort of obligation, preceded the amendment to Rule 11, and, indeed, the district court did inquire. The district court said, I assume there are no other consequences we should discuss, and both defense counsel and government said, no, he's a citizen. Yes, he's a citizen. You don't have to- But what about the PSR that gave different information? Judge, the PSR to me is a complete red herring in this case, for lack of a better characterization. The PSR talks about somebody named Jimmy Lozano-Yemi Lozano, which is my client's name- who entered the country at a different time from Mr. Lozano, was not a citizen of the United States. We know that the PSR was inaccurate, not only because Mr. Lozano entered on a completely different date, because Mr. Lozano was a citizen of the United States. The government doesn't claim otherwise as of that date. Did the government contest that at the time, or did the government agree that he was a citizen at the time of sentencing? Yes. At the time of plea, it was brought up as sort of it would appropriately or naturally be, and nothing else was mentioned about it thereafter. But I would say, and I think it's an essential point here, that this Court has, in essence, disavowed the cases that, Your Honor, Judge Sullivan, you were referring to previously, the older cases that are somewhere between 70 and 40 years old, in which this Court had held that immigration consequences of a plea were collateral, and therefore a plea could be entered voluntarily even if a client didn't understand them. Those cases have since been explicitly disavowed in 2002 in United States v. CUDO. Well, there have been substantial legislative changes since the time of those cases were issued. That's correct, and that's something that this Court referred to in CUDO, says, look, we used to believe, we, this Court, used to believe or held, on the basis of the fact that there was relief from deportation available, that that was the underpinning or one of the intellectual underpinnings of those older cases. Because there was possibility of relief, we're going to consider this a collateral consequence. The other intellectual underpinning in those cases, the old cases that this Court explicitly disavowed in CUDO, was the idea that somehow, because some other body, other than the sentencing court, imposed the penalty of deportation, that therefore deportation was not a direct consequence. Judge, oh, go ahead. Come back to the PSR. Now, this is quorum novus, which has an obligation of reasonable inquiry. Due diligence, essentially. And you say the PSR was just wrong because it was talking about a different person? Yes. And I don't believe the government disagrees with that. The fact that was potentially, that I think Judge Calhoun, he did not make that finding. He puts in a footnote that that. Why wasn't there at least an obligation to inquire when the report says he's a born, he's not a citizen? Well, you have initially at the plea everybody agreeing that he was a United States citizen. You have Mr. Lee. Not everybody. The PSR writer didn't think. I said at the time of the plea, Your Honor. At the time of the plea when he. Oh, at the plea.  Which is the relevant. But by the time of the proceeding, before they leave the court. Right. Which is the relevant determination, or when Mr. We're concerned about when Mr. Lozano entered his plea. At the time he entered his plea, everybody believed. Well, but if he goes, if he's to be believed that he wouldn't have pled if he knew, if they check this out, and they're alerted by the fact that the PSR says what it says, and they say, well, we better check this out. We better find out what the law is on what the age of the child is at the time of the mother's naturalization. They go all through the inquiry, and they find out, you know, he's not a citizen. Doesn't he go back to the district court and say, Judge, there was a misunderstanding here. You better let me withdraw the plea. Had he checked it out, he would have found that he was a citizen of the United States, because in the year in which he was sentenced, in 2006, he was a citizen of the United States. The State Department. What was the age on which citizenship goes through the mother? It was, I believe it changed over time, but he was beyond that age. It is factually not. He was beyond that age. It is not. So he didn't acquire citizenship through the mother at the time of the plea. No. It's sort of, we're looking retrospectively, Your Honor. You raised the question of what would have happened had Mr. Lozano gone back in 2006 at the time of sentencing. He would have found out, if he had checked with the State Department, that he was a citizen. And we have proof of that in the record, because the State Department issued him another passport. That doesn't mean they got it right. That just may mean they overlooked what age he was at the time. But the State Department made that determination in 2004 before he entered. Is this like an estoppel? 2002. And then again, no, Judge, I'm saying that had he made any, first of all, I. . . Would he have looked up the law and found out. . . He'd already received the advice of counsel, Your Honor, that he was eligible for derivative citizenship through his mother. He applied for that, and he was given a passport by the State Department. All right. Let me ask you about his ultimate statement, that had he known, he would have gone to trial. Well, as I said, there was no . . . Because Judge Kodal did not find a basis for providing relief in this case, did not find that a defendant has a right to not be affirmatively misadvised under the Fifth Amendment about the immigration consequences of his plea, Judge Kodal did not make a factual finding about whether or not Mr. Lozano . . . There's a reasonable probability that Mr. Lozano would have gone to trial. All right. Therefore, if we agree with your first proposition, that he was entitled to think he was a citizen, should we remand for a determination, for a finding of whether he would have gone to trial? Yes, Your Honor. I think in the time that this case was pending in the district court, the Supreme Court decided United States v. Lee, and that clarified what the standard is in terms of what a moving party has to show to vacate a plea on these grounds. There had been a debate about whether it was a reasonable defendant standard or whatever. The district court did ask for a briefing on that, but ultimately did not reach that issue. What do you say the standard is? I have no choice in the matter. The United States Supreme Court has spoken, and the standard is whether there's a reasonable probability that the client would have entered the plea had he known the correct state of facts about his immigration. Was there any concern on a credibility finding? I think there would be factual findings. I mean, this court has previously said before Lee that a person's word is not determinative. In United States v. Kovacs, were you granted coram nobis relief on this basis? And in CUDO, there were facts in the record that indicated immigration was a significant factor in the client's decision to enter a plea. So I think it's, to some degree, credibility, and to some degree, what are the surrounding circumstances? For example, in this case, Mr. Lozano, which this court discussed in Kovacs, Mr. Lozano entered the country when he was 12 years old. He entered legally. He entered with virtually his entire family. He was back to the Dominican Republic in the years since then, the, you know, 20-plus years since then, one time. He has a child here. I mean, there are factors that this court has previously and the Supreme Court, Lee, has instructed the district court to consider. What's the status of the immigration case? Pending. I don't represent him, Your Honor, but last I spoke to his immigration counsel. I believe they have been able to put it off pending this court's decision. Put off even having an ALJ finding? There's no determination? My understanding is there's been no determination on whether his removal, on the government's petition for removal from the country. Can I ask a question about the PSR? Yes. Did anybody object to that portion of the PSR? No one did. No, defense counsel did not. So why isn't that ineffective assistance? You said there wasn't ineffective assistance here. Why isn't that ineffective assistance? That may or may not be ineffective assistance, Judge. It's not cognizable at this stage of the game. Well, it may not be cognizable, but for Quorum Novus, it sort of matters whether or not he sat on his hands, right? It would matter if Mr. Lozano sat on his hands. There is a requirement that a Quorum Novus court find that the moving party raise the issue as soon as is reasonably practicable. Mr. Lozano, as I said, and that's why I got into the facts of it, there was no reason for him to believe, or I would say, in fact, for counsel to believe that there was anything in the PSR other than a mistake. And, in fact, as I said before, had he gone back and inquired, he would have found that he was a citizen of the United States, according to the State Department. I mean, essentially what we have here is somebody who pled guilty, believing that certain consequences would flow from that plea, and reasonably believing, based on actions by the United States government, finding out a decade, more than a decade later, that he was in an entirely different circumstance. By the time, you know, he figured, or he was told by the State Department that he was not a citizen, it was far too long to bring a direct appeal. Obviously, it was far too long to bring any sort of claim of ineffective assistance of counsel. So, in terms of due diligence, he's done what he can do. He didn't find out that there was any issue here until June of 2017, and the quorum was brought, I think, in January, 2016, and the quorum was brought in January of 2017. Okay, thank you very much. Thank you. We have three minutes for rebuttal. We'll hear from the government. May it please the Court. My name is Nicholas Fowley, and I'm an assistant United States attorney in the Southern District of New York. I represent the United States on this appeal, and conducted the quorum notice proceedings before the district court. Relying almost exclusively on Sixth Amendment jurisprudence, the defendant is asking the court today to import the broader protections of the Sixth Amendment into the Fifth Amendment and recognize a never-before-recognized due process right essentially to perfect information. Are you saying there's not a due process right in connection with entering a plea? I mean, look at Rule 11. Look at all the jurisprudence we have about voluntary and willing pleas that are entered in the criminal proceedings.  We've been discussing here knowing what the consequences of entering a plea are. Are you saying there's no Fifth Amendment interest? Your Honor, the Fifth Amendment interest is limited to knowing the direct consequences of entering a guilty plea. I think your opponent is saying that those consequences have become very direct as a result of legislation, and it's recognized now in Rule 11 that you can count on being removed after a criminal conviction of many kinds. And that seems persuasive to me. The law has changed a lot in the past 50 years. Why is that wrong? Your Honor, the law on immigration has changed. However, the test for determining whether a consequence is direct or is a collateral consequence is not a test that hinges on the certainty of that consequence occurring, and that's exactly the issue that was in front of the Mitchell Court in which the Mitchell Court rejected that formulation of the rule and held instead that the determining factor in whether it's direct or collateral is whether the sanction is one that the judge is himself meting out. And it's important to note the specific facts in Mitchell because there the defendant was subject to automatic removal because he was a convicted drug dealer. That's the exact same reasoning that the defendant is now arguing should be adopted here, that because of changes to the immigration laws, those consequences— He knew a fact that rendered him removable, right? Isn't that what you're telling us? The case you just mentioned, the drug case, the defendant knew he was removable, right? Well, the defendant's argument there in Mitchell was that the court had not informed him of the collateral consequences as in the deportation consequences of entering his plea. In that case, he was removable, and he's charged with knowledge of that, right? Your Honor, my understanding is that on the facts of Mitchell, he was contending that his plea was not voluntary because he did not understand the meaning of the special parole term at the time that he entered his plea. But as far as the removability— Yeah, in addition that he did not understand that as a resident alien— This fellow isn't saying he didn't understand it. He's saying the government affirmatively misled him. Isn't that different? Your Honor, it's not different as to the question of whether it was a collateral or direct consequence because that issue hinders on whether it's the court that is directly imposing the sanction. Under Mitchell, that's the test. And here— You mean even if he had asked, Judge, if I plead, am I removable? And the judge had said, I guarantee you the answer is no, that wouldn't matter? Your Honor, that is an issue that's not presented here. I understand, but it goes to your argument that so long as it's collateral, it doesn't matter if the government misleads. Your Honor, there's several reasons that the representation by the State Department in issuing that passport doesn't change the analysis here. And why not? The first is that the issuance of the passport was completely separate from the plea proceedings. It had nothing to do with the plea proceedings. The passport was issued two years before the defendant pled guilty. Well, sure, it's separate. They're not claiming he got the passport in order to effect the plea. They're saying he got the passport from the government, and that is the government telling him he's a citizen, and therefore he doesn't have to fear removal, and therefore he can plead. What's wrong with that sequence of arguments? Your Honor, as Judge Codall pointed out, the issue is that there's no connection to the plea proceeding. It's background information that the defendant had going into the plea. It wasn't an affirmative misrepresentation by the court. It wasn't an affirmative misrepresentation by the defense counsel, and it was information that was completely divorced from the plea proceeding.  If he asks his lawyer, am I liable to be deported, and the lawyer says, not if you're a citizen, and he says, well, here's my passport, I'm a citizen, how is that completely divorced? Your Honor, there was no representation at the time of the plea proceeding. There has to be some limitation on due process that connects the right to the proceedings, and this is the issue that Mitchell was concerned with, because if there's not some limitation, it puts the court in the impossible position of ensuring that there is due process in effectuating a plea. There's nothing that the district judge in this case could have done at the time of the plea to satisfy the test that is being advanced here, and furthermore, the courts have been very clear that this Sixth Amendment is broader. It provides broader protections in plea proceedings than the Fifth Amendment does, and that's notable because even Padilla recognized that there are limitations on the guidance that a defense attorney is providing to their client to ensure whether or not the plea is knowing and voluntary. There could be some situations where there's particularly complicated deportation consequences, and it's sufficient that the defense attorney provide notice and nothing more to the defendant that there could be deportation consequences. So to adhere to prior precedent, this court should continue to define the Fifth Amendment protections as being more narrow than the Sixth Amendment protections, and even the Sixth Amendment protections provide limitations on the scope of notice that's required in connection with plea proceedings. Your Honor, in addition to that, even if this court were now to conclude for the first time that there is a stand-alone Fifth Amendment right and that immigration consequences are direct consequences, that would be a new rule of law. This court has never held that. No other circuit has ever held that. We have hinted at it in our earlier cases. We have said, I think, I don't have my citations right here, but we have earlier alluded to Fifth Amendment rights that are inherent still in a plea entry that's different and run a different course than the Sixth Amendment right to counsel that are kind of unaffected, actually, by the Padilla and Chaidez decisions, but acknowledge the fundamental right to fairness in the context of knowing what the consequences of a plea are. And to my mind, what's changed over time is that deportation used to be an uncertain result. It's now virtually certain. And I take your argument to be that because that has to do with the State Department and not the court, that it ought to be disregarded. But I don't see how anyone can make a reasonable determination about whether to enter a plea knowingly and voluntarily, absent understanding that if you are not a citizen, you are likely to be deported. What is wrong with that reasoning? Your Honor, the test that Your Honor was focused on there as to the certainty of the immigration consequence following from entry of the guilty plea is the very test that was rejected by this court in the Mitchell court. Instead, it was focused on whether or not it's the direct sanction that the court itself is actually imposing on the defendant, and nobody here is claiming that deportation was the consequence that the district court directly imposed on the defendant at the time of his plea. But furthermore, this would be a new rule because it would depart from prior case precedent. It would be inconsistent with the sister circuits. How do you articulate the new rule that you say would be created? That deportation is a direct consequence of a guilty plea. Supposing we don't go on that, supposing we don't announce, we don't say that. We just say the government can't mislead him, even as to an indirect consequence. Your Honor, even if that were the case as set forth in our brief, the government probation in this case also told the defendant at the time of his sentence that he was not a U.S. citizen before his sentence, and he didn't inquire about it. And that contemporaneous evidence under Lee suggests that that was not important information that guided his decision in whether or not to plead guilty. So he says had he inquired, he would have been told he was a citizen by the State Department. Do you dispute that? Your Honor, if he had inquired with more diligence than simply asking or confirming for himself that he had a passport in his hands, but actually inquired with ice and tried to figure out why is it that in the PSR I am being told that I am, in fact, not a U.S. citizen, then that line of inquiry would have led him to understand that his passport had been issued in error. Your Honor, as I see that I'm at— Her argument is had he gone to the State Department, that's not what he would have been told, and her evidence is that, in fact, he was issued a renewed passport. Your Honor, that's not where the information came from, so that would not have been the appropriate place to inquire. The information included in the PSR was coming from—  Well, the information in the PSR said where it was from, and I believe it said it was from ICE, so that would have been the appropriate agency to direct the inquiry. Section 2705 of Title 22 says the following document shall have the same force and effect as proof of United States citizenship as certificates of naturalization or citizenship issued by the Attorney General or by a court having naturalization jurisdiction, a passport, during its period of validity. The statute, what Congress has said is that a passport is proof of citizenship, so why was he obligated to go ask ICE? He was obligated because he was put on notice. He actually accepted the facts as they were put forth. And the government didn't contest that he was a citizen. Why would he go ask ICE? Your Honor, at the time of the sentencing, the government also accepted the facts that were put forth in the PSR, which said that he was, in several places, said that he was not a United States citizen. And also had other errors as to entry date and so on. No one contested them. No one was focusing on it, apparently. Your Honor, but those inclusions in the PSR at least put him on notice and would have allowed him to inquire to the agency that that information actually came from, which was not the Department of State. Thank you for your argument. Thank you, Your Honor. Okay. Ms. Carvlin. Yes, just to sort of respond to some of the issues that came up, Your Honors. One of them was whether or not this concept about the fact that it's not the sentencing court but some other body that imposes the penalty. This court, as Your Honor recalled, has addressed that issue directly. The initial case that held that was Mitchell. As opposing counsel has stated, that was decided in 1974. In 2002 in Kudo, I'm referring to footnote 10, this court says, Mitchell seemed to say that what mattered was not the likelihood of an event occurring as a result of a guilty plea, but whether it was the court accepting the plea or another institution that made the decision that would bring about the event in question. There's a citation to Mitchell. Then this court says, still, although the Mitchell panel expressed disapproval of determining directness of a consequence based on the likelihood of its occurrence, virtual certainty is another matter. Thus, when an event is a certain consequence of a decision by a court, it's meaningless to say that the court did not obtain that event. Any action by any other institution are purely ministerial. Additionally, as Your Honor said, this court hinted very strongly in Kudo that there is a Fifth Amendment right to not be misled or that a plea would be involuntary if a defendant were misled about the immigration consequences of its plea. And again, I'm quoting from Kudo at page 190. On its face, defendant's argument is persuasive, and we believe that it deserves careful consideration, even though other circuits, the First, Sixth, and Ninth, have declined to reconsider their prior holdings on this point. So are strong hints the ability to overturn a holding that's good law? This court has already overturned the holdings. This court has already said it didn't say we're overturning Mitchell. It didn't say we're overturning Bayh. But the quote I just read to you, and there's other quotes from Kudo, explicitly reject, in coming to the conclusion about the Sixth Amendment, explicitly reject the intellectual underpinnings of those cases. They say, in essence, they were maybe incorrectly decided when they were decided, or if they were decided correctly when they were decided, they're no longer good law because life has changed in the intervening 40 years. I mean, if they were maybe wrongly decided, we get to just do that, or does it have to go to the en banc court? No, what I'm saying is that this court has already made the determination. I'm not asking you to. Mitchell's no longer good law as far as you're concerned. Yes. It's been reversed already. I wouldn't say it's been reversed, but I think this court has already ignored it in Kudo, reached the decision it reached in Kudo in the face of Mitchell and Sangelisi and Perino. Would you say that statutory and other developments have made the context in which it was rendered no longer apt? I would, as this court did in Kudo. That's why I say whether it was rightly decided at the time, life has changed, the statutes have changed, and the virtual certainty of immigration has changed. Thank you. Thank you very much. Can I ask a question? Oh, sure. Just, I mean, what are the district courts then to take away from this? I mean, it's not ineffective assistance for a lawyer who has actual access to investigative resources to figure out whether or not this person is deportable. That's not ineffective assistance, but it is a Fifth Amendment problem that the court isn't omniscient. Neither of those things am I arguing. I am not saying that the court had any obligation to make an inquiry. It didn't. The court had no obligation, and the court nevertheless, because Judge Kodal was always thorough, and even though it was before Rule 11 was amended, he made the inquiry. And defense counsel also had made the inquiry, and the government had made the inquiry, and the result was the same. He was a citizen of the United States. It was subsequent actions by the State Department that changed that fact. So, in the future, I mean, I'm going to leave tomorrow, should I just say that I don't know if you're a citizen? It says here you are. But if you are not, then you could be deported, and you should check that out. You should make sure that you get yourself an immigration lawyer to determine whether or not you could be deported, and I'll give you a week to do that. No, as a matter of fact, I think that's what your argument, Your Honor, and the government's argument would lead to. Essentially, the government is saying is that although the client had proof of his citizenship, he had some further obligation to inquire. I'm not saying the court had any obligation to inquire. I'm not saying counsel was ineffective. That issue is not before this court. It would not be even raised in any decision that this court makes in this case. I'm saying that if somebody takes a plea when the State Department has affirmatively told them, you are a citizen of the United States, and later that person finds out that that was incorrect, not based on any inaction on their part or any fraud on their part, but based on problems with the State Department's determination, that that person's plea is not voluntary, that that does not comply with due process. All right, but if it's not the State Department misleading or making an affirmative statement, it's just that the defendant believes he's a natural-born citizen and he's not. It's not just if you believe it. I think that would be a different situation. Nor do I think that this court needs to assign blame to anyone. I'm not assigning blame to the district court or to his trial counsel. That's, I think, not the analysis. I think the analysis is, was this plea entered knowingly, intelligently, and voluntarily? These are such unusual circumstances. This case doesn't need to give rise. This court's decision in this case doesn't give rise to any large implications. Unusual facts, maybe unique facts in this case. This man entered the plea believing, based on the State Department's issuing him a passport, which is presumptive proof of citizenship, that he was a citizen of the United States. And because of that, his plea could not be considered knowing and intelligent and voluntary. Okay. Thank you very much. Thank you. Well argued. That concludes our oral argument calendar today. We have one other case, which is on submission. That's Smith v. Brooks, No. 133874. The clerk will please adjourn court. Court is adjourned.